PETERSON *v.* UNITED PIPING &
ERECTING COMPANY.

1. ACCOUNT—JOINT ADVENTURE—LOSSES—COMPUTATION.

Losses of one party in an accounting action should not be computed on the basis of estimated expenditures and the losses of the other party on the basis of actual expenditures when the two parties were engaged in a joint adventure and had agreed that profits or losses would be shared equally, since the estimated expenditures may have included an element of profit.

2. SAME—JOINT ADVENTURE—LOSSES—FINDINGS OF FACT.

The trial judge should make and express such findings of fact as are necessary to make clear his determination in an action for an accounting between joint adventurers who had agreed that all profits or losses arising from the adventure would be shared equally.

3. COSTS—REMAND FOR FURTHER PROCEEDINGS.

Costs will not be awarded by the Court of Appeals until a final determination is made by the trial court, when the case is remanded to it by the Court of Appeals for further proceedings.

Appeal from Ingham, Hughes (Sam Street), J. Submitted Division 2 December 6, 1967, at Lansing. (Docket No. 3,148.)   Decided October 21, 1968.

Complaint by Roscoe F. Peterson against United Piping & Erecting Company, a Michigan corporation, for an equitable accounting. Judgment for plaintiff. Defendant appeals. Remanded for further proceedings.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 30 Am Jur, Joint Adventures § 60 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 1012.

*Glassen, Parr, Rhead & McLean,* for plaintiff.

*C. Bruce Kelley,* for defendant.

Per Curiam. The plaintiff Peterson and the defendant United Piping & Erecting Company agree that they should equally share their collective loss on the construction of the Cheboygan sewage treatment plant. There does not appear to be any substantial disagreement regarding the computation of United's loss. The principal disagreement concerns the computation of Peterson's loss.

United submitted an exhibit A which showed expenditures of $61,661.95 for materials and $10,742.31 for labor on the job, or a total cost to United of $72,404.26. United also claimed $5,380.70 for overhead expenses, but that item was rejected by the trial judge and United on this appeal does not challenge that determination. United conceded collecting $56,082.79 and now asserts that the difference between $72,404.26 and $56.082.79, *i. e.,* $16,321.47, represents its loss.[1]

The parties agree that there should be included in computing Peterson's loss $4,260 for the rental of Peterson's equipment used on the job and $3,450 for wages due Peterson at the rate of $150 per week for supervision of the job.[2] There is also agreement

[1] Peterson disputed $642.59 of that amount, but it would appear from the amount of the judgment here on appeal that the trial judge decided the sum of $642.59 was properly includable in computing United's loss, and that the amount of United's loss was in fact $16,321.47.

[2] Both amounts were provided for in a writing signed by the parties and one Wick dated June 21, 1954, which is separate from the writing also dated June 21, 1954, signed by the parties and Wick addressed to First National Bank of Eaton Rapids, Michigan; the latter writing advises the addressee that the parties had entered into an agreement for the erection of a sewage treatment plant at Cheboygan, Michigan, "on a joint venture basis of 1/3 each for the subject project complete, with all expenses incurred and profits to be divided equally three ways" between the three parties, United, Peterson and Wick. Wick subsequently became insolvent.

that there should be included in computing Peterson's loss $1,258.46 for expenses advanced by Peterson and that the amount received by Peterson in respect to all the foregoing was $1,050, leaving a balance of expenditures ($8,968.46) over receipts ($1,050) of $7,918.46. United asserts that Peterson's loss is that amount, namely $7,918.46.

The disputed question on this appeal is whether $13,502.40 for so-called "contract work",[3] which it would appear the trial judge included in the computation of Peterson's loss, was properly included in such computation.[4]

---

[3] There was testimony that it was Peterson's job to do the earth work, sewer and drain work and the rough grading portion of the site improvement work. The $16,091 figure for Peterson's share of the "contract work" was arrived at by adding the $4,466 shown on the draw sheet for earth work, and the $11,125 shown on the draw sheet for sewers and drains and $500 which Peterson testified represented the rough grading portion of the $4,284 shown on the draw sheet for site improvements.

In light of our disposition of this appeal, no purpose would be served in trying to reconstruct the $2,588.60 deduction from the $16,091 figure which deduction Peterson agrees is justified. The deduction is for the portion of the $16,091 which Peterson concedes was incomplete. The net amount remaining after deducting $2,588.60 from $16,091 is $13,502.40.

[4] Peterson testified he did not receive any amount in respect to the so-called contract work done by him.

If United is correct in its contention that the $13,502.40 amount should not be included in computing Peterson's loss, then the sum of Peterson's loss of $7,918.46 conceded by United and United's loss of $16,321.47 is $24,239.93; one-half thereof $12,119.97; and if there is deducted from $12,119.97 the amount of Peterson's conceded loss of $7,918.46, the balance is $4,201.51, which is the amount for which United, as appellant, seeks judgment on this appeal.

On the other hand, if the $13,502.40 which Peterson claims should be included for his contract work is added to the $24,239.93 stated as the total loss of both parties in the last preceding paragraph the total loss of both parties becomes $37,742.33, and each of their shares of the loss would be $18,871.17 and Peterson would be entitled to a judgment of $2,549.69.

The figure of $2,549.69 was arrived at by adding the two figures claimed by Peterson to constitute his loss, $7,918.46 and $13,502.40, the sum of which is $21,420.86, and then subtracting one-half of the amount Peterson asserts is the collective loss of Peterson and United, *i.e.*, $18,871.17, which leaves $2,549.69. The trial judge granted Peterson a judgment for $2,024.69. The difference between that amount and the $2,549.69 which under the last computation would be due Peterson, namely $525 is one-half of the $1,050 which Peterson

Whether the $13,502.40 for contract work should be included in computing Peterson's loss turns on whether that amount does in fact represent a loss. Implicit in the trial judge's determination that Peterson should recover $2,024.69 from United (see footnote 4) was a finding that the $13,502.40 did represent a loss to Peterson. However, the trial judge filed no specific findings, and the record support for his implicit finding is somewhat nebulous. While it appears both from Wick's[5] and Peterson's testimony that Peterson did perform contract work additional to that covered by the $8,968.46 amount, *i. e.*, work additional to the rental of equipment, supervisory services and the $1,258.46 of expense items, we do not think that the values ascribed in the draw sheet to the specific items of contract work claimed to have been done by Peterson are necessarily the correct amounts to be included in computing Peterson's loss.

United's loss was determined on the basis of alleged actual expenditures; Peterson's loss appears to have been computed on the basis of estimated expenditures, which estimates may have included an element of profit.

The amounts of the parties' respective losses should be determined to the extent possible in the same manner. Since it appears that the amount of United's loss was computed by following one approach and Peterson's by following another, we remand this case to the trial judge for recomputation of the losses of the parties and for the entry of judgment following the making of such findings as

conceded he received in respect to the items United agrees should be included in determining Peterson's loss. The computation attached to the "memorandum on behalf of appellee" dated December 27, 1967, shows that the $1,050 amount was deducted twice in arriving at the amount of Peterson's loss, and, thus, understated Peterson's loss by that amount.

[5] See footnote 2.

are necessary to make clear the basis of the trial judge's determination.

If such remand hearing takes place before the same judge who tried this case, the record so far made may be treated as part of the record on such remand hearing, the parties to be given the opportunity to add to the record additional evidence pertaining to the issues in dispute. We do not retain jurisdiction.

Costs of this appeal to abide the event.

Remanded.

QUINN, P. J., and T. G. KAVANAGH and LEVIN, JJ., concurred.